**CHESTNUT HILL DEVELOPMENT CORPORATION, Plaintiff,**

v.

**OTIS ELEVATOR COMPANY, Defendant.**

**Civ. A. No. 86–1387–C.**

United States District Court, D. Massachusetts.

Feb. 19, 1987.

Philipp G. Grefe, Ring, Rudnick, Grefe & Freed, Boston, Mass., for plaintiff.

David Abelman, William H. Baker, Gregory M. Kennan, Nutter, MClennen & Fish, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a contract and unfair trade practices action brought by Chestnut Hill Development Corporation ("Chestnut Hill"), the owner and developer of a condominium complex known as Hampton Place, against Otis Elevator Company ("Otis"), for the alleged defective installation and maintenance of five elevators. The action was commenced in the Superior Court of the Commonwealth of Massachusetts and was properly removed to this Court pursuant to 28 U.S.C. § 1441. Plaintiff is a Massachusetts corporation with its principal place of business in Boston. Defendant is a New Jersey corporation with its principal place of business in Farmington, Connecticut. The amount in controversy exceeds $10,-000. This Court exercises its diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. The matter is now before the Court on defendant's motion for summary judgment, or, in the alternative, for partial summary judgment.

### I. Background

On January 21, 1983, the plaintiff, Chestnut Hill, entered into a multi-million dollar contract with Vappi Construction Company ("Vappi") for the construction of Hampton Place. On June 17, 1983, the defendant, Otis, entered into a subcontract with Vappi in which Otis agreed to furnish and install five elevators at Hampton Place, by March 1, 1984, for a price of $375,000. The five elevators to be installed included one hydraulic elevator, two geared-drive elevators and two battery-powered elevators known in the trade as "Mid-Rise Systems with Variable Frequency Drive Control" ("MRVF"). It is not disputed that two elevators were formally accepted by Vappi on August 3, 1984, two others were accepted on November 20, 1984, and that the final elevator was accepted on December 17, 1984. On May 3, 1985, Chestnut Hill and Otis entered into a separate maintenance contract covering the five Hampton Place elevators.

In its complaint, Chestnut Hill alleges that it sustained monetary damages as a result of the delayed installation of the elevators. Chestnut Hill further complains that the elevators are defective and that none of them function properly. The problems with the MRVF, as well as with the other three elevators, include excessive noise during operation, rough and shaky rides, uneven levelling at floors, and inoperative doors. Moreover, Chestnut Hill contends that during the negotiations over the Otis elevators Otis knew that its MRVF elevators presented similar operations problems nationwide. Chestnut Hill contends that such problems were the result of defective design and defective components. Despite Otis' knowledge of such problems, Chestnut Hill alleges that Otis made representations regarding the MRVF system's lower operating and maintenance costs, smoother rides, more accurate levelling and reduced noise during operation, thereby influencing Chestnut Hill's selection of the Otis elevators.

On March 27, 1986, Chestnut Hill filed a five count complaint against Otis. Count I alleges that Otis breached its contract with Vappi, a contract to which Chestnut Hill asserts it is a third party beneficiary. Counts II, III and IV allege that Otis breached express and implied warranties arising out of that contract. In Count V Chestnut Hill alleges that Otis engaged in unfair and deceptive trade practices in violation of M.G.L. c. 93A § 2. Chestnut Hill requests this Court to award it $1,000,000 in direct damages, $10,000,000 in lost profits, which total amount is to be trebled pursuant to M.G.L. c. 93A § 11. In response to Chestnut Hill's complaint, Otis requests this Court to grant summary judgment in its favor on all the counts pursuant to Fed.R.Civ.P. 56(c), or alternatively, to rule that Chestnut Hill's claim for consequential damages fails as a matter of law.

Summary judgment is appropriate when the moving party persuades the Court that based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ...

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Otis is thus entitled to summary judgment only if the record, when considered in the light most favorable to Chestnut Hill, fails to reveal questions of fact that are both "genuine" and "material." *Hahn v. Sargeant*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In this matter, for the following reasons, defendant's motion for summary judgment should be denied, and defendant's alternative motion for partial summary judgment on the issue of consequential damages should be allowed.

## II. *The Third Party Beneficiary Theory*

Otis' primary argument in support of its motion for summary judgment on Chestnut Hill's third party beneficiary claim is that an owner-developer like Chestnut Hill is not a third party beneficiary of a contract entered into by a general contractor and a subcontractor. Otis argues that in order for Chestnut Hill to prevail on its claim that it suffered damages as a result of Otis' alleged breach of the Otis-Vappi subcontract, Chestnut Hill must be an intended beneficiary of that subcontract. Otis maintains that Chestnut Hill is instead an incidental beneficiary of that subcontract and as such has no contractual relationship with Otis. Otis relies primarily on *Rae v. Air Speed, Inc.*, 386 Mass. 187, 195, 435 N.E.2d 628 (1982), where the Massachusetts Supreme Judicial Court adopted the test set forth in the *Restatement (Second) of Contracts* for determining whether a party is an intended or incidental beneficiary of a contract. Section 302 of the *Restatement* provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Otis contends that Chestnut Hill gained no third party beneficiary rights against Otis because the performance of Otis' promise to Vappi was to satisfy a contractual obligation to Vappi, not to Chestnut Hill. Moreover, Otis contends that it did not promise to fulfill Vappi's promise to Chestnut Hill, which was to furnish completed condominium units. Instead, Otis promised only to furnish and install the five elevators. According to Otis, Chestnut Hill is thus merely an incidental beneficiary.

In opposition, Chestnut Hill also relies primarily on the test adopted by the court in *Rae* to argue that Chestnut Hill is an intended beneficiary. Chestnut Hill maintains that the parties' clear intent in entering into the subcontract was to benefit Chestnut Hill. Chestnut Hill further maintains that its own employee, Jeffrey Kosow met with Otis employees, selected the Otis elevators and subsequently directed Vappi to enter into a contract with Otis. Kosow Affidavit at 2. Chestnut Hill argues that its employees participated in meetings regarding the installation process and that the acceptance certificates prepared by Otis reflect that Otis' contract was with Chestnut Hill. Kosow Affidavit at 3. Chestnut Hill also contends that its primary construction contract with Vappi supports the argument that Chestnut Hill intended to be benefitted by any subcontractor's performance of the subcontract.[1]

---

1. Section 5.3.2 of the Supplementary Conditions of the Chestnut Hill-Vappi contract provides: Each subcontract shall contain a clause by which the subcontractor agrees that the owner or its assignee shall have the right, prior to any termination of the subcontract, and after notice to the subcontractor, to assume the Contractor's rights and obligations in the subcontract. Nothing herein shall create any third party beneficiary or agency relationship between the Owner and any subcontractor.

The question of whether a third party like Chestnut Hill is the intended or the incidental beneficiary of a subcontract turns on whether the party claiming such status meets the two part test adopted by the court in *Rae*. 386 Mass. at 195, 435 N.E.2d 628. Here, the issue is whether Vappi and Otis intended to benefit Chestnut Hill when they executed the subcontract. Despite the language of the Chestnut Hill-Vappi contract requiring subcontractor agreements to contain a clause entitling Chestnut Hill to "assume the contractor's rights and obligations in the subcontract," Thompson Affidavit, Ex. E, Otis contends that no such clause appears in its subcontract with Vappi. On the other hand, the Otis-Vappi subcontract provides that Otis will furnish and install the elevators "in strict accordance with this Agreement [*and*] the Agreement between the Owner and the Contractor dated January 21, 1983...." Thompson Affidavit, Ex. E (emphasis added). This discrepancy raises ambiguities regarding the parties intent as to third party beneficiary rights. A court is thus permitted to consider all the relevant circumstances surrounding the transaction when interpreting the contract. *Sunbury Textile Mills, Inc. v. C.I.R.*, 585 F.2d 1190, 1195 (3d Cir.1978).[2]

■ The relevant circumstances here raise factual questions as to whether the parties intended Chestnut Hill to be a third party beneficiary. Not only are the questions raised of a factual nature, but they are also of a genuine nature, thus precluding summary judgment. *Cf. Boston Five Cents Savings Bank v. Secretary of Housing and Urban Development*, 768 F.2d 5, 8 (1st Cir.1985) (to grant summary judgment on issue of disputed meaning of contract, Judge must determine that words are so

clear that reasonable people would not differ over their meaning). Such clarity of meaning is not present in this matter, thus summary judgment on this issue is not appropriate.

■ Regardless of whether Chestnut Hill proves that the Otis-Vappi subcontract was intended for its benefit, Chestnut Hill should not be entitled to recover consequential damages sustained as a result of the alleged breach by Otis. The 1983 Otis-Vappi subcontract, as supplemented by an acknowledgment letter drafted by Otis, provides that "under no circumstances shall either of us be liable to the other for consequential damages." Thompson Affidavit, Ex. C. Where, as here, a third party beneficiary seeks to enforce a warranty arising out of a contract, it stands in the shoes of the promisee and is subject to any of the defenses available against the promisee. *Rae*, 386 Mass. at 196, 435 N.E.2d 628. In *Rae*, the court permitted a decedent's spouse to bring an action against decedent's employer and the employer's insurance company for the breach of the defendants' agreement to obtain workers' compensation insurance. 386 Mass. at 195, 435 N.E.2d 628. The court noted, however, that such a ruling was not intended to preclude the defendant insurance company from raising any defenses available against decedent's employer. *Id.* at 196, 435 N.E.2d 628. Here, the Otis-Vappi subcontract expressly bars the recovery, by either party, of consequential damages. Otis' motion for summary judgment on this issue should therefore be granted.

### III. *The Breach of Warranty Claims*

Counts II, III and IV of Chestnut Hill's complaint allege that Otis' failure to fur-

**2.** Some courts deny recovery in construction cases involving claims similar to Chestnut Hill's on the grounds that the general contractor's duty to construct a completed building is distinct from a subcontractor's duty to complete one portion of the project. *See, e.g., Port Chester Electric Construction Co. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976) (subcontractor is an incidental beneficiary); *see also*, 4A Corbin, *Contracts* § 779D (installation

of plumbing fixtures by subcontractor is not discharge of general contractor's duty to deliver a completed building). Other courts, in consideration of all the circumstances, determine that the duties of the parties are not so distinct, and have therefore allowed recovery. *See, e.g., Oliver B. Cannon & Son Inc., v. Dorr-Oliver, Inc.*, 336 A.2d 211, 215 (Del.1975) (subcontract manifested intent that owner-developer was to be ultimate beneficiary of contract).

nish and install elevators in accordance with contract specifications constitutes a breach of the express warranty, the implied warranty of merchantability and the implied warranty of fitness for particular use.[3] In its motion for summary judgment, Otis contends that Chestnut Hill's warranty claims fail for lack of privity since the common law, not the Uniform Commercial Code ("UCC"), governs this matter. Although the UCC, M.G.L. c. 106 § 2–318, abolishes the privity requirement for breach of warranty claims, Otis contends that the common law still requires privity. Otis argues that an elevator system such as the one installed at Hampton Place is not a "transaction in goods" within the meaning of Article 2 of the UCC, M.G.L. c. 106 § 2–102, and therefore Chestnut Hill must be in privity with Otis in order to support its common law breach of warranties claim. Otis maintains that there is no direct contractual relationship between it and Chestnut Hill, thus there is no privity.

■ Turning first to the question of whether the UCC or the common law governs this claim the decision by the Massachusetts Supreme Judicial Court in *White v. Peabody Construction Co., Inc.*, 386 Mass. 121, 132, 434 N.E.2d 1015 (1982), provides some guidance. In its decision in *White*, the court ruled that "[c]ontracts whose predominant factor, thrust or purpose is the rendition of services are not within the scope of art. 2." *Id.* Here, the Otis-Vappi subcontract cannot be characterized as one whose primary thrust is the rendition of services since Otis also agreed to furnish the hundreds of components that, once installed, would constitute an elevator system. The term "goods," as used in the UCC, M.G.L. c. 106 § 2–105, however, "means all things ... which are movable at the time of identification to the contract for sale...." Modular homes are

thus goods, *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 581, 441 N.E.2d 1027 (1982), whereas neither a sprinkler system installed during the construction of a building, nor the construction of a foundation and installation of a septic system is considered to be "goods." *White*, 386 Mass. at 132, 434 N.E.2d 1015 (citations omitted). Once installed, an elevator system, like a sprinkler system, is an integral part of a constructed building. Thus, structures that are "attached to realty," such as this elevator system are not "goods" within the meaning of the U.C.C. *Id.*

■ To support its claim against Otis for breach of warranty under the common law, Chestnut Hill must be in privity with Otis. *Necktas v. General Motors Corp.*, 357 Mass. 546, 549, 259 N.E.2d 234 (1970); *Pearl v. William Filene's Sons Co.*, 317 Mass. 529, 531, 58 N.E.2d 825 (1945); *Marcil v. John Deere Industrial Equipment Co.*, 9 Mass.App. 625, 629, 403 N.E.2d 430 (1980). Since it is unresolved whether there is privity under a third party beneficiary theory, it is not appropriate now to determine as a matter of law that privity is lacking for a breach of warranty claim. *Eagle Transport Ltd., Inc. v. O'Connor*, 470 F.Supp. 731, 734 (S.D.N.Y.1979) (question of whether there is privity between the parties is a question of fact). Otis' motion for summary judgment on this issue should thus be denied.

## IV. *The Chapter 93A Claim*

In its complaint, Chestnut Hill alleges that Otis' defective installation and maintenance of the elevators at Hampton Place constitutes an unfair and deceptive trade practice within the meaning of M.G.L. c. 93A § 2.[4] Chestnut Hill argues that its damages, including consequential damages, are therefore recoverable pursuant to M.G.L. c. 93A § 11.[5] Chestnut Hill relies

---

3. Although Chestnut Hill does not expressly rely for support on the UCC, these warranties arise pursuant to UCC §§ 2–313–315, M.G.L. c. 106 §§ 2–313–315.

4. M.G.L. c. 93A § 2(a) makes unlawful any "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce."

5. M.G.L. c. 93A § 11 provides that:
recovery shall be in the amount of actual damages; or up to three, but not less than two, times the amount if the court finds that

primarily on *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693, 322 N.E.2d 768 (1975), in which the court ruled that the statutory terms "unfair and deceptive practices' [in G.L. c. 93A § 2] are not limited by traditional tort and contract law requirements."

 Otis contends that Chestnut Hill's Chapter 93A claim fails as a matter of law on the grounds that there is no direct contractual relationship between Chestnut Hill and Otis. There is, however, no requirement that parties be in privity before their actions come within the regulatory ambit of M.G.L. c. 93A § 2. *Jurgens v. Abraham*, 616 F.Supp. 1381, 1386 (D.Mass.1985) (fraudulent misrepresentations designed to induce party to enter into agreement constitute violation of M.G.L. c. 93A). Precontractual negotiations thus fall within the prohibitions of the statute. Moreover, Otis supplies to the Court no cases in which a court considers the issue of third party privity in the context of Chapter 93A claims. Otis relies on *Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 323–24, 446 N.E.2d 681 (1983), in which the court held that a buyer of real estate could not bring a Chapter 93A claim against the seller's land surveyor for failing to disclose the existence of a seasonal stream on the property because there was no direct contractual relationship between the buyer and the surveyor. There was no allegation that the buyer was a third party beneficiary of the seller-surveyor contract. The court in *Nei* noted that "[a]lthough we recognize that there is no requirement of privity of contract, it is somewhat significant that [the surveyor] had no contractual or business relationship with the [buyers]." *Id.* at 324, 446 N.E.2d 681. Indeed, the court emphasized the surveyor's "minor role" in the sales negotiations between seller and buyers. *Id.* Here, the facts present a different picture: there was an active, three-way negotiation over the Otis-Vappi subcontract and Chestnut Hill alleges it

was an active participant in those negotiations. Chestnut Hill's Chapter 93A claim should thus proceed to trial.

 As to Chestnut Hill's claim that consequential damages are recoverable pursuant to Chapter 93A, I rule for the reasons discussed *infra* that such damages are not recoverable in this case since they are expressly barred by the subcontract. Chapter 93A permits this Court to double or treble "actual" damages if the defendant's violations are found to be "willful or knowing." M.G.L. c. 93A § 11. By enacting § 11, the Legislature did not authorize this Court to render meaningless the agreed-upon provisions in a signed contract between Otis and Vappi. I rule, therefore, that the defendant's motion for summary judgment should be denied and defendant's alternative motion for partial summary judgment on the issue of consequential damages should be granted.

Order accordingly.

<hr />

---

the use or employment of the method of competition or the act or practice was a willful or

knowing violation of said section two.