COFFIN, Senior Circuit Judge.
 

 Plaintiff Cambridge Plating Company filed this lawsuit against defendant Napco seeking damages for a defective wastewa-ter treatment system. The district court granted summary judgment for Napco, concluding as a matter of law that the statutes of limitations had run on plaintiff’s claims. On appeal, Cambridge Plating argues that the court should have let the jury decide whether Massachusetts’s “discovery” rule suspended the running of the limitations clock long enough to preserve its claims. Because we agree with plaintiff that material issues of fact remain, we reverse the summary judgment.
 

 I.
 

 A.
 
 Factual Background
 

 Cambridge Plating is an electroplating business that discharges wastewater containing various metal contaminants into municipal sewers. In an effort to meet strict environmental regulations governing such discharges, the company commissioned the design and installation of a wastewater treatment system from defendant Napco. The contract price for the system was nearly $400,000. Cambridge Plating additionally needed to make substantial changes to its facility to accommodate the enormous and complex array of pipes, tanks, valves, mixers, sensors, recorders and other apparatus, pushing the total cost for the project to $2.8 million.
 

 
 *23
 
 The system began running on October 30, 1984, but it was not then fully operational, and Napco continued installation and debugging for another year. In October 1985, Cambridge Plating began to experience unsatisfactory results; testing revealed that contaminant levels in the wastewater discharges sometimes exceeded regulatory limits. Cambridge Plating’s managers believed the problems stemmed from errors by the system operators or errors in wastewater sampling. This belief was fueled by Napco representatives who, when contacted by Cambridge Plating on a number of occasions between early 1986 and 1988, suggested ways that Cambridge Plating could change its operation of the system. Napco refused further visits to Cambridge Plating to, service the system unless it was paid $1,000 per day.
 

 Cambridge Plating took several steps to resolve the perceived operational or sampling problems. It replaced the system operators and implemented the changes suggested by Napco. In late 1986, the company asked a wastewater treatment expert, Patrick Hunt, to evaluate the system and the company’s operation of it. Although Hunt found some minor problems with the system itself, most of his recommendations were operational. Cambridge Plating adopted his suggestions, but the company continued periodically to exceed lawful contaminant levels.
 

 On December 29, 1988, the Massachusetts Water Resources Authority (MWRA), the agency responsible for effluent regulation, assessed a penalty of $682,250 on Cambridge Plating for violations during 1986-88. In February 1989, Cambridge Plating commissioned another expert, Peter Moleux, to evaluate the system. Mo-leux’s lengthy inspection, which included a close comparison of Napco’s written materials with the system as it actually existed, revealed design flaws, failure to install parts specified in the plans, and substandard engineering practices. Most significantly, Moleux discovered that Napco had failed to install an important component, a static mixer, inside a pipe where system schematics provided by Napco indicated erroneously the device had been placed. Omission of the static mixer rendered the system incapable of adequately cleaning 80 percent of the wastewater.
 

 After Moleux’s evaluation, Cambridge Plating installed a static mixer at the point called for by Napco’s plans. The system thereafter worked properly, enabling Cambridge Plating consistently to comply with the effluent limitations.
 

 B.
 
 Procedural Background
 

 Cambridge Plating filed this action in June 1990, alleging causes of action for breach of contract, negligence, fraud, negligent misrepresentation, and violation of the Massachusetts unfair business practices act, Mass.Gen.Laws Ann. ch. 93A. Napco moved for summary judgment, arguing that all of Cambridge Plating’s claims were barred by the applicable statutes of limitation. The district court agreed with Napco.
 

 The court concluded that Cambridge Plating’s purchase of the wastewater treatment system was a sale of goods, and that its contract claim thus was governed by the four-year limitations period under the Uniform Commercial Code, Mass.Gen.Laws Ann. ch. 106, § 2-725, rather than by the general six-year contractual limitations period, Mass.Gen.Laws Ann. ch. 260, § 2. All of Cambridge Plating’s causes of action, therefore, were subject to either three- or four-year statutes of limitation.
 
 [1]
 
 These claims were time-barred, the court determined, because they accrued in late 1985, some four and one-half years before suit, when the company learned that the system was failing to bring effluent discharges within legal limits. The court rejected plaintiff’s argument that the limitations periods were tolled until Moleux’s evaluation, when Cambridge Plating first learned the cause of the system’s problems. The court concluded that, with reasonable diligence, Cambridge Plating could have discovered the defects once the system started malfunctioning.
 

 
 *24
 
 On appeal, Cambridge Plating argues that the court misconstrued the contract and the discovery rule, which serves to toll certain hard-to-discern claims, and improperly usurped the jury’s role when it decided as a matter of law that the rule did not preserve the company’s claims. Our review of the district court’s grant of summary judgment is plenary, and we read the record in the light most amicable to the party contesting summary judgment.
 
 See, e.g., Pagano v. Frank,
 
 983 F.2d 343, 347 (1st Cir.1993).
 

 II.
 

 Cambridge Plating contends that the district court erred in ruling as a matter of law that the contract with Napco was a sale of goods contract within the scope of the UCC. Although determining the type of contract at issue typically may be a jury function,
 
 see United States v. City of Twin Falls,
 
 806 F.2d 862, 870 (9th Cir.1986), we believe the facts here are sufficiently clear and undisputed that the district court was permitted to make its finding as a matter of law.
 
 Id.
 

 Cambridge Plating asserts that the UCC is inapplicable because the equipment it purchased does not meet the Code’s definition of goods. Under the UCC, “goods” are defined as “all things ... which are movable at the time of identification to the contract for sale_”
 
 See
 
 Mass.Gen.Laws Ann. ch. 106, § 2-105. The company emphasizes the immense size of the wastewa-ter treatment system and its integration into the electroplating facility in an effort to equate this situation with
 
 White v. Peabody Construction Co.,
 
 386 Mass. 121, 132, 434 N.E.2d 1015 (1982), where the court ruled that the UCC does not apply to “the sale of structures attached to realty.”
 

 But this comparison is flawed. The claims in
 
 White
 
 were based on contracts calling for “[t]he erection of buildings” and for the sale of a completed building — “not contracts for the sale of bricks or window frames or caulking material.”
 
 Id.
 
 at 131, 133, 434 N.E.2d 1015. In this case, the proposal specified the components of the system as the primary subject of the sale and, indeed, specifically described the contract as one “for goods.”
 
 See
 
 App. at 113. The proposal separately listed eighty-eight items to be provided by Napco, eighty-two of which involved pieces of equipment. At the time of identification to the contract, these were movable and therefore goods within the scope of the UCC.
 
 Accord Twin Falls,
 
 806 F.2d at 871 (components of wastewater treatment system are movable goods). It was only after installation into plaintiff’s building that the items became merged with the facility and hence unmovable — to borrow the district court’s analogy, like cans of paint sold as goods and then applied to a wall.
 
 [2]
 

 That the contract involved the purchase of engineering and installation services, in addition to a sale of goods, is of no consequence. In our view, Massachusetts law is consistent with the general trend to view such mixed contracts as governed by the UCC.
 
 See Twin Falls,
 
 806 F.2d at 871. In
 
 White,
 
 386 Mass, at 131-32, 434 N.E.2d 1015, the Supreme Judicial Court ruled that “[cjontracts whose predominant factor, thrust, or purpose is the rendition of services” are outside the scope of the UCC. It follows inexorably that, if the “rendition of services” is not at the heart of a mixed contract, the UCC does govern.
 
 See USM Corp. v. Arthur D. Little Systems, Inc.,
 
 28 Mass.App. 108, 119, 546 N.E.2d 888 (1989) (contract for computer system involving both sale of goods and delivery of services governed by UCC).
 

 The undisputed facts demonstrate that the deal between Cambridge Plating and Napco was first, and foremost, a sale of goods. Most of the purchase price was for the specifically listed items of equipment. Only $68,970 of the total contract price of $398,200 was for installation,
 
 [3]
 
 and purchas
 
 *25
 
 ing installation from Napco was even optional.
 
 See generally Chestnut Hill Dev. Corp. v. Otis Elevator Co.,
 
 653 F.Supp. 927, 932 (D.Mass.1987) (a contract to supply “hundreds of components” is not “one whose primary thrust is the rendition of services”). Because the contract was so heavily weighted toward goods, it must fall within the scope of the UCC.
 

 The district court correctly applied the UCC to plaintiffs contract claim. We thus move on to consider whether this and Cambridge Plating’s other claims were timely brought.
 

 III.
 

 Although the Massachusetts legislature has set statutory limitations periods for various causes of action,
 
 see supra
 
 at 23 & n. 1, determining when claims accrue “ ‘has long been the product of judicial interpretation,’ ”
 
 Hoult v. Hoult,
 
 792 F.Supp. 143, 144 (D.Mass.1992) (quoting
 
 Franklin v. Albert,
 
 381 Mass. 611, 617, 411 N.E.2d 458 (1980)). Caselaw establishes that the general rule for negligence claims is that the cause of action accrues at the time of injury.
 
 Riley v. Presnell,
 
 409 Mass. 239, 243, 565 N.E.2d 780 (1991). Similarly, a cause of action for breach of contract usually accrues at the time of the breach,
 
 International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,
 
 29 Mass.App.Ct. 215, 221, 560 N.E.2d 122 (1990), and accrual of a chapter 93A claim typically occurs at the time injury results from the assertedly unfair or deceptive acts. 29 Mass.App. at 220-21, 560 N.E.2d 122.
 

 These designated times are subject to some flexibility, however, because Massachusetts courts have recognized that it would be unfair to begin running the statute of limitations before a plaintiff is put on notice that she has a claim.
 
 See Bowen v. Eli Lilly & Co.,
 
 408 Mass. 204, 205, 557 N.E.2d 739 (1990);
 
 Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.,
 
 396 Mass. 818, 824, 489 N.E.2d 172 (1986);
 
 Franklin,
 
 381 Mass, at 619, 411 N.E.2d 458. The judicially created tool for ensuring fairness is the “discovery rule,”which provides that, regardless of the actual time of breach or injury, “a cause of action does not accrue until a plaintiff discovers, or reasonably should have discovered, that she may have been injured as a result of the defendant’s conduct.”
 
 Hoult,
 
 792 F.Supp. at 144.
 
 See also Riley,
 
 409 Mass, at 244, 565 N.E.2d 780;
 
 Bowen,
 
 408 Mass, at 205-06, 557 N.E.2d 739;
 
 Hendrickson v. Sears,
 
 365 Mass. 83, 83-84, 310 N.E.2d 131 (1974). The delayed knowledge may be either the fact of injury, such as when an item is not used and thus not discovered to be defective for a substantial time after its purchase,
 
 see, e.g., Anthony’s Pier Four, Inc.,
 
 396 Mass, at 825-26, 489 N.E.2d 172,
 
 [4]
 
 or the cause of the harm, such as when an individual with a physical illness does not discover the illness’s link to particular medical treatment until years after becoming sick,
 
 see, e.g., Bowen,
 
 408 Mass, at 207, 557 N.E.2d 739.
 
 [5]
 

 Not all contractual causes of action in Massachusetts are governed by the judicially crafted accrual rules. Claims alleging breach of a contract for the sale of goods instead are subject to the detailed provisions of the UCC. Under § 2-725(2), a cause of action for breach of a sales contract generally accrues when the breach occurs, “regardless of the aggrieved party’s lack of knowledge of the breach,” and a breach of warranty occurs when tender of delivery is made. Mass.Gen.Laws Ann. ch. 106, § 2-725(2). When a seller gives an explicit warranty of future performance, however,
 

 
 *26
 
 and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
 

 Id.
 
 Thus, like the tort and contract causes of action subject to the judicial discovery rule, a cause of action for breach of a warranty of future performance is tolled until the plaintiff has adequate notice of the claim.
 

 The district court found that the transaction at issue here was a sale of goods, and that the UCC therefore governs the contract claim. It further determined that Napco expressly had warranted the future performance of the wastewater treatment system, and that, consequently, the statutory discovery provision applies. Because we have concluded that the district court correctly ruled as a matter of law that the parties entered into a sale of goods, and there is no challenge to its finding that Napco gave an explicit warranty of future performance, the timeliness of all of plaintiff's claims is linked to the discovery rule.
 

 IV.
 

 Our analysis of the discovery rule’s impact in this case must begin with the parties’ conflicting views on how the rule operates. Defendant Napco asserts that the rule applies only to “inherently unknowable” causes of action and that the question before us is whether Cambridge Plating’s claims were discoverable through reasonably diligent efforts.
 
 [6]
 
 If Cambridge Plating
 
 could
 
 have discovered its claims earlier through reasonable diligence, Napco maintains, then they were not
 
 inherently
 
 unknowable and the discovery rule would not apply.
 

 Cambridge Plating counters that the applicability of the discovery rule does not depend on whether it was possible for the company to discover Napco’s responsibility for the defects earlier by pursuing some other reasonable course of action. The inquiry, it asserts, must focus on the reasonableness of what the company actually did. If the company acted diligently, but still reasonably failed to learn of its cause of action, the discovery rule would continue to delay the limitations clock.
 

 The district court adopted Napco’s view, finding that Cambridge Plating could have discovered the system’s defects once the company learned that the water treatment equipment was failing to bring effluent discharges within legal limits. The court pointed to expert Moleux’s affidavit as evidence that “the defects were manifestly
 
 knowable
 
 to someone with an appropriately trained eye,” Opinion at 10 (emphasis in original). It did not matter, the court ruled, whether Cambridge Plating had exercised reasonable diligence in hiring the first expert, who did not discover the defects: “[wjhether a defect is inherently unknowable turns not upon an inquiry into whether the injured party did
 
 in fact
 
 exercise reasonable diligence, but instead upon an inquiry into whether reasonable diligence
 
 could
 
 have led to discovery of the defects,”
 
 id.
 
 at 11 n. 5 (emphasis in original). This implies that at least two courses of action would meet a standard of reasonable diligence — one pursued by the injured party and another that could have been pursued.
 

 We are persuaded that Cambridge Plating’s statement of the discovery rule is the one consistent with prevailing Massachusetts law. The rule is designed to protect plaintiffs, to assure that “ ‘a plaintiff [ ] be put on notice before his claim is barred,’ ”
 
 Anthony’s Pier Four, Inc.,
 
 396 Mass, at 824, 489 N.E.2d 172 (quoting
 
 Franklin,
 
 381 Mass, at 619, 411 N.E.2d 458). This protection would be frustrated if a plaintiff who remained unaware of his claim even after conducting reasonable inquiry was time-barred from pursuing it. Fairness dictates
 
 *27
 
 that the discovery rule not be deemed inapplicable simply because reasonable actions other than those taken by the plaintiff
 
 could
 
 have uncovered the injury or cause of harm.
 
 See generally Franklin,
 
 381 Mass, at 618, 411 N.E.2d 458 (limitations statutes are intended,
 
 inter alia,
 
 to “ ‘stimulate [plaintiffs] to activity’ ” and “punish[] negligent delay”) (quoting
 
 Wood v. Carpenter,
 
 101 U.S. 135, 139, 25 L.Ed. 807 (1879)).
 

 Indeed, the contrary conclusion would require something more than reasonableness on the part of the plaintiff; Cambridge’ Plating complains that nothing less than omniscience would do. Whenever more than one reasonable option for pursuing a claim existed — when, for example, two or three qualified experts were available to investigate a non-performing piece of equipment — the plaintiff would be penalized if the first expert chosen reasonably failed to discover a problem the second expert managed to detect. That the plaintiff had been diligent in hiring the first expert would be irrelevant, even though the very point of the rule was to protect plaintiffs whose reasonable efforts would fail to put them on notice of their claims. This, certainly, cannot be the intent of the Massachusetts courts.
 

 The formulation that we believe reflects prevailing Massachusetts law was particularly well articulated in
 
 Bowen,
 
 one of the Supreme Judicial Court’s more recent discovery rule cases:
 

 This rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant’s conduct.
 

 [T]he statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.
 

 408 Mass, at 205-206, 207, 557 N.E.2d 739.
 
 See also, e.g., Riley,
 
 409 Mass, at 243, 565 N.E.2d 780;
 
 Franklin,
 
 381 Mass, at 619, 411 N.E.2d 458.
 
 Bowen
 
 makes it clear that the steps taken by a plaintiff to discover her cause of action play a role in the decision whether to apply the discovery rule: “the decision whether any [injury] should reasonably have been uncovered ha[s] to be made in light of what reasonable inquiry would have disclosed.”
 
 Id.,
 
 408 Mass, at 206, 557 N.E.2d 739 (citing
 
 Friedman,
 
 371 Mass, at 485-86, 358 N.E.2d 994). Accrual of the plaintiff’s cause of action is tested, therefore, “by what a reasonable person in her position would have known or on inquiry would have discovered at the various relevant times,”
 
 Bowen,
 
 408 Mass, at 210, 557 N.E.2d 739.
 

 Thus, if Cambridge Plating acted reasonably diligently when it hired the first expert, the fact that that expert failed to discover the system’s defects must be sufficient to toll the statute of limitations.
 
 [7]
 
 This is so because, if reasonable inquiry failed to disclose the problem, it cannot be said that the problem “should reasonably have been uncovered,”
 
 Bowen,
 
 408 Mass, at 206, 557 N.E.2d 739.
 
 [8]
 

 We recognize that the district court’s interpretation finds literal support in the language of a number of cases, which describe the discovery rule as applicable only to “inherently unknowable” claims or refer to the time when a plaintiff “could” have known of his claim.
 
 See, e.g., Melrose Hous. Auth. v. New Hampshire Ins. Co.,
 
 402 Mass. 27, 34, 520 N.E.2d 493 (1988);
 
 *28
 

 Anthony’s Pier Four, Inc.,
 
 396 Mass, at 825-26 n. 9, 489 N.E.2d 172;
 
 White,
 
 386 Mass, at 129-30, 434 N.E.2d 1015;
 
 Inter-national Mobiles Corp.,
 
 29 Mass.App. at 222, 560 N.E.2d 122;
 
 Melrose Hous. Auth. v. New Hampshire Ins. Co.,
 
 24 Mass.App. 207, 212, 507 N.E.2d 787 (1987). But this support erodes on analysis.
 

 The two cases cited by the district court as precedent for the standard it applied also refer to the “reasonably
 
 should
 
 have known” formulation,
 
 see White,
 
 386 Mass. at 129 & 130, 434 N.E.2d 1015;
 
 Melrose Hous. Auth.,
 
 24 Mass.App. at 212, 507 N.E.2d 787, as do other cases cited by Napco,
 
 see, e.g., Anthony’s Pier Four, Inc.,
 
 396 Mass, at 825-26 & n. 9, 489 N.E.2d 172;
 
 International Mobiles,
 
 29 Mass.App. at 218
 
 &
 
 222, 560 N.E.2d 122. Moreover, none of these cases involved a plaintiff in the position Cambridge Plating claims to be in here, i.e., one who acted diligently, yet still failed to learn of a cause of action.
 

 These cases, instead, uniformly involve plaintiffs who were
 
 not
 
 diligent, and that circumstance,.we believe, has led the courts to describe the rule imprecisely. When a plaintiff has made no reasonable efforts to discover the harm or its cause, considering whether a plaintiff reasonably
 
 should
 
 have discovered his claim will produce the same result as considering whether he reasonably
 
 could
 
 have discovered it. For example, if a court found that a claim could
 
 not
 
 be discovered through reasonable diligence, it would be precluding as well a finding that he reasonably should have discovered it.
 
 See, e.g., White,
 
 386 Mass, at 130, 434 N.E.2d 1015 (in cases cited, “the nature of the defendant’s wrong was such that the plaintiff did not discover and could not reasonably have discovered that he or she had been injured until [a later time]”).
 

 Similarly, a court might find that, if the plaintiff had been diligent, she
 
 could
 
 have discovered her claim. From this conclusion, lacking contrary information, it also is logical to presume that the plaintiff
 
 should
 
 have discovered her claim. Having failed to act, the plaintiff has no basis for disputing the court’s sensible presumption that reasonable actions would have produced results.
 
 See, e.g., Friedman v. Jablonski,
 
 371 Mass. 482, 486, 358 N.E.2d 994 (1976);
 
 Melrose,
 
 24 Mass.App. at 212-215, 507 N.E.2d 787;
 
 Graveline v. Baybank Valley Trust Co.,
 
 19 Mass.App. 253, 254-55, 473 N.E.2d 700 (1985). “Could” and “should” effectively are interchangeable in this context, and the courts’ particular usage is of no significance.
 

 Only when a plaintiff has done what he is supposed to do, and still comes up empty, is a court faced with a possible disjunction between what he theoretically
 
 could
 
 have known if he had chosen a different reasonable path, and what he
 
 should
 
 have known based on the reasonable inquiry he did make. Because none of the cases cited to us present that situation, and because construing the rule as the district court applied it effectively would take away the protection the discovery rule is designed to provide, we are confident that Cambridge Plating’s view of the discovery rule is correct.
 

 We think it worth emphasizing that, so construed, the rule does not permit a plaintiff to buy time by engaging an incompetent “expert.” Hiring an individual who is poorly suited to investigate the type of injury suffered by the plaintiff is unlikely to be deemed “reasonable” inquiry sufficient to suspend the limitations period. Moreover, even if the plaintiff reasonably hires a professional he believes to be competent, but who fails to discover a defect that a qualified expert easily should have found, the plaintiff’s only recourse is likely to be against the deficient professional. The discovery rule would not save the overlooked claim because reasonable inquiry
 
 should
 
 have put the plaintiff on notice of it.
 
 See Friedman,
 
 371 Mass. at 486 & n. 4, 358 N.E.2d 994 (a competent lawyer would have done title search and should have discovered defect).
 

 The discovery rule’s protection is limited in another way as well. The rule does not suspend the running of the limitations period pending confirmation of the plaintiff’s injury or its cause, but simply stops the clock until the occurrence of “an event or events ... that were reasonably
 
 *29
 
 .likely to put the plaintiff on notice that someone
 
 may
 
 have caused her injury,”
 
 Bowen,
 
 408 Mass, at 207, 557 N.E.2d 739 (emphasis added). Thus, a plaintiff who in the 1970s was told that her injury may have been caused by her mother’s ingestion of DES was unable to invoke the discovery rule to save the lawsuit she filed a decade later, when she felt more certain of the causal connection.
 
 See id.
 
 at 209-10, 557 N.E.2d 739.
 

 Applying these principles to the case at hand, Cambridge Plating’s ability to invoke the discovery rule — and thus the timeliness of its claims — turns on when the company should have known that Napco might be responsible for the water treatment system’s failing performance. In Section V, we discuss our conclusion that this question must be answered by the trier of fact.
 
 See Riley,
 
 409 Mass, at 247-48, 565 N.E.2d 780 (jury should decide disputed issues relating to statute of limitations).
 

 V.
 

 To survive Napco’s motion for summary judgment based on the statute of limitations, Cambridge Plating must show a genuine issue of material fact as to whether it knew or should have known of its claims before June 22, 1987.
 
 [9]
 

 See Fidler v. Eastman Kodak Co.,
 
 714 F.2d 192, 197-98 (1st Cir.1983);
 
 Hoult,
 
 792 F.Supp. at 145;
 
 Riley,
 
 409 Mass. at 244, 247, 565 N.E.2d 780. No one suggests that Cambridge Plating in fact knew the source of the system’s problems before early 1989, and the issue therefore is whether there is a factual dispute over whether the company should have realized Napco’s possible responsibility before that date.
 

 A careful analysis of the record persuades us that such a dispute exists. In finding that Cambridge Plating was on notice of its claims in late 1985, the district court relied heavily on the company’s having learned at that time that the system was failing to bring effluent discharges down to acceptable levels. The court felt that Cambridge Plating’s knowledge of the deficiencies meant that it knew that the performance warranty was being breached. Additionally, consistent with its understanding of the discovery rule,
 
 see
 
 Section IV
 
 supra,
 
 the court ruled that Cambridge Plating was then on notice of the other claims as well.
 

 The system’s inadequate performance in late 1985 strikes us as far less portentous. Beyond doubt, when the system first was installed, and throughout Napco’s debugging process, Cambridge Plating had no reason to suspect the serious flaws. Omission of the static mixer was virtually impossible for anyone but a wastewater treatment expert to discover, both because the device was supposed to be located
 
 inside
 
 a pipe and because Napco’s diagrams indicated that it had been installed. Moreover, any deficiencies presumably were to be resolved once Napco finished its finetuning.
 

 When the problems persisted despite Napco’s announcement that debugging was complete, two explanations theoretically were available. Either the system itself was defective, or it was being operated improperly. At this point, however, the two possibilities were not equally weighted. Cambridge Plating knew that the system was technically complex and required sensitive operation. And Napco’s only response to Cambridge Plating’s inquiries was to suggest ways to improve operation.
 

 In these circumstances, we do not believe Massachusetts law requires a finding that Cambridge Plating was on notice of the system’s defects. A plaintiff is sufficiently aware of her cause of action, and thus should have discovered it, once she has received “notice of likely cause,”
 
 Fidler,
 
 714 F.2d at 199 (quoted in
 
 Bowen,
 
 408 Mass, at 207-08, 557 N.E.2d 739). Accordingly, as we understand the requisite notice, the statute of limitations will begin to
 
 *30
 
 run once the plaintiff has enough information to target the defendant as a suspect, though not necessarily to identify the defendant as the culprit.
 
 See Bowen,
 
 408 Mass. at 207-08, 557 N.E.2d 739. We think it within a factfinder’s province to conclude that, in late 1985, Cambridge Plating had no basis for suspecting Napco’s workmanship and reasonably attributed the system’s problems solely to its own deficient operation. If so, the statute of limitations would not yet have begun to run.
 
 [10]
 

 Cambridge Plating hired new operators, but the problems persisted. So, in late 1986, the company engaged its first expert evaluation of the system. This, too, resulted in only operational suggestions. Should this expert have discovered the defects? Again, we believe this is a question properly answered by the trier of fact. The record contains little information about the first expert, describing him only as an assistant instructor for a wastewater treatment course at a community college who “worked on waste treatment for Hewlett Packard.”
 
 See
 
 Affidavit of Edward Marul-lo, at 2. Was he competent to evaluate the system? Would even a well qualified expert necessarily have uncovered the problem based on what he knew about the system at that point? Was it reasonable to rely on the schematics provided by Napco showing that a static mixer had been installed? Perhaps the second expert discovered the defects only because, in light of the earlier expert's reasonable work, a more exhaustive study now appeared necessary.
 
 [11]
 

 Because the record leaves these subsidiary issues unresolved, factual questions remain as to whether Cambridge Plating should have known even by the end of 1986 of Napco’s possible responsibility for the system’s failings. If the expert’s failure to discover the defects was reasonable, a jury could find that Cambridge Plating continued to deserve protection from the discovery rule beyond that time.
 
 [12]
 

 Whether the rule’s impact, assuming it reached this far, continued on through the time of actual discovery is also a matter for jury deliberation. Was it reasonable for the company to wait another two years before seeking additional advice? Was there a point in time after Cambridge Plating had complied with all of the first expert’s suggestions, still without any change in the system’s performance, that the company reasonably should have realized that Napco’s work may have been to blame?
 

 In short, many questions remain. To determine when Cambridge Plating “reasonably should have discovered” that it might have claims against Napco requires a review of specific circumstances about which the record presently contains sketchy information. Consequently, the district court’s grant of summary judgment must be set aside.
 
 [13]
 

 Reversed and remanded. No costs.
 

 [1]
 

 . Tort actions are subject to a three-year limitations period, Mass.Gen.Laws Ann. ch. 260, § 2A, and a four-year statute applies to consumer protection actions brought under Chapter 93A, Mass.Gen.Laws Ann. ch. 260, § 5A.
 

 [2]
 

 . Plaintiff also cites in support of its position
 
 Chestnut Hill Dev. Corp. v. Otis Elevator Co.,
 
 653 F.Supp. 927, 932 (D.Mass.1987), which held that structures "attached to realty,” such as the elevator system at issue there, are not “goods” within the meaning of the UCC. Under the UCC, however, the inquiry centers on the nature of the goods "at the time of identification to the contract,” Mass.Gen.Laws Ann. ch. 106, § 2-105. It is beyond debate that the contract here listed movable items.
 
 See Burnham v. Mark IV Homes, Inc.,
 
 387 Mass. 575, 581, 441 N.E.2d 1027 (1982) (modular homes are "goods" within coverage of UCC).
 

 [3]
 

 . The cost of engineering services to assist Cambridge Plating with preparing its local industrial discharge permit and meeting with local officials — a single item among a
 
 list
 
 of 83 — also was included in the equipment subtotal.
 

 [4]
 

 .
 
 Anthony’s Pier Four
 
 involved an action filed in 1980 against the designers of a ship mooring system that had been completed in 1968. The plaintiff claimed that it was unaware of the system’s design deficiencies until it actually failed during a storm in 1978. The court held that the lawsuit was timely because "[t]he plaintiff discovered the breach when the boat capsized in 1978 and there is no showing that it should have known of the breach earlier." 396 Mass, at 826, 489 N.E.2d 172.
 

 [5]
 

 . The plaintiff in
 
 Bowen
 
 had suffered a malignant vaginal tumor requiring surgery in 1969 but did not file suit blaming the cancer on a prescription drug manufactured by defendant Eli Lilly & Co. until 1983. The court applied the discovery rule, but nevertheless determined that the plaintiff was on notice that the defendant may have caused her harm more than three years before filing her action. 408 Mass, at 210, 557 N.E.2d 739.
 

 [6]
 

 . Although the dictionary definition suggests that an "inherently” unknowable claim is one that would be
 
 permanently
 
 undiscoverable,
 
 see The Random House Dictionary of the English Language
 
 (2d ed. 1987) at 982, the phrase has been used to describe a cause of action that was incapable of detection for some prolonged period of time even with the exercise of reasonable diligence.
 
 See, e.g., Tagliente v. Himmer, 949
 
 F.2d 1, 5 (1st Cir.1991);
 
 White v. Peabody Construction Co.,
 
 386 Mass. 121, 129, 434 N.E.2d 1015 (1982);
 
 International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,
 
 29 Mass.App.Ct. 215, 222, 560 N.E.2d 122 (1990).
 

 [7]
 

 . We presume here that the expert performed competently.
 
 See infra
 
 p. 28.
 

 [8]
 

 . The district court’s decision may reflect an implicit finding that the first expert’s efforts were inadequate. If Moleux's exhaustive study of the system would have met but not surpassed the threshold standard of reasonableness even if done two years earlier, then Hunt’s apparently less thorough review would not have been sufficient inquiry under the discovery rule. On the other hand, if Cambridge Plating exercised reasonable diligence in hiring Hunt, and his performance was competent, then Moleux’s efforts beyond the reasonableness threshold should not furnish a basis for denying discovery rule protection. On this record, we do not think that the district court could determine as a matter of law that the first evaluation was incompetent.
 
 See
 
 Section V
 
 infra.
 

 [9]
 

 . The lawsuit was filed on June 22, 1990. As discussed in Section III,
 
 supra,
 
 certain of the claims have four-year, rather than three-year, statutes of limitation, and those claims would be timely even if Cambridge Plating learned of them a year earlier, in 1986. For the sake of simplicity, because it makes no difference in the result, we discuss the claims as if all needed to be filed within three years of their discovery.
 

 [10]
 

 . The facts here contrast with those in
 
 White v. Peabody Construction Co.,
 
 386 Mass. 121, 434 N.E.2d 1015 (1982), where plaintiffs sought to recover damages resulting from widespread window and roof leaks allegedly caused by defendants' improper design and construction of a housing project. The court rejected application of the discovery rule there because the plaintiffs "reasonably should have known that widespread water leaks in a newly constructed building are almost certainly the result of design or construction defects."
 
 Id.
 
 at 130, 434 N.E.2d 1015.
 

 [11]
 

 . An affidavit from the second expert, Peter Moleux, states that, in his opinion, "the defects in the system could have been discovered only by someone with expertise and training in the field similar to mine and only after a lengthy and thorough inspection and analysis.”
 
 See
 
 App. at 179 ¶ 33. Moleux reported that he spent “many days” identifying the system's problems.
 

 [12]
 

 . Of course, claims subject to four-year limitations periods would be timely even if the discovery rule only tolled the running of the clock through the end of 1986.
 

 [13]
 

 . We are unpersuaded by Cambridge Plating's alternative theories that the statutes were tolled because (1) Napco concealed omission of the static mixer and (2) Napco had a fiduciary duty to disclose the omission but failed to do so.
 
 See generally White v. Peabody Construction Co., Inc.,
 
 386 Mass. 121, 133-34, 434 N.E.2d 1015 (1982).