BERNADETTE WHITE & another[1] vs. PEABODY CONSTRUCTION
Co., INC. & another.[2]

Suffolk. January 6, 1982. — May 5, 1982.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Limitations, Statute of. Housing. Practice, Civil,* Motion to dismiss, Summary judgment. *Negligence,* Contractor. *Sale,* Warranty. *Uniform Commercial Code,* Warranty. *Fraud.*

In a civil action the judge properly treated a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6) as a motion for summary judgment under rule 56, where admissions of fact by the plaintiffs' counsel at the hearing on the motion presented matters outside the pleading; in the circumstances, the judge's failure to notify the plaintiffs that he intended to treat the motion as one for summary judgment, even if error, did not require reversal, since his action could not have unfairly surprised them. [126-128]

At the hearing on a motion to dismiss an action by tenants in a public housing project against the developer and general contractor on the project, to recover damages for window and roof leaks, a statement by the plaintiffs' counsel to the effect that the building was plagued with serious leakage from its inception constituted an admission of sufficient facts to determine the issue of the running of the statute of limitations on the plaintiffs' counts for negligence. [128-131]

Warranty provisions contained in art. 2 of the Uniform Commercial Code, G. L. c. 106, had no application to a contract for construction and sale of a completed building. [131-133]

In an action by tenants in a public housing project against the real estate developer and general contractor on the project to recover damages for window and roof leaks, the defendants were entitled to summary judgment by reason of the running of the statute of limitations, where repair efforts by the defendants, together with their denials of responsibility and their representations as to the efficacy of the attempted repairs, raised no factual issue as to whether the running of the statute of limitations had been tolled, on the theory either of fraudulent concealment of the cause of action, or of estoppel. [133-135]

[1] Giovanna Ferrara.

[2] Lidapell Corporation, Inc.

CIVIL ACTION commenced in the Superior Court Department on September 30, 1980.

The case was heard by *Zobel,* J., on motions for summary judgment, and postjudgment motions were also heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Harry A. Pierce* for the plaintiffs.

*Cornelius J. Moynihan, Jr.,* for Peabody Construction Co., Inc.

*Brian M. McMahon* for Lidapell Corporation, Inc.

LYNCH, J. This is an action brought by tenants of the Heritage Elderly Housing Project (Heritage), located in East Boston, against the developer and the general contractor for the project. The named plaintiffs seek, on behalf of themselves and all other tenants of Heritage,[3] to recover damages resulting from widespread window and roof leaks allegedly caused by the defendants' improper design and construction of the project.

The plaintiffs' complaint, filed September 30, 1980, is in five counts. In two of the counts the plaintiffs contend that the defendant Lidapell Corporation, Inc. (Lidapell) (1) negligently breached a duty it owed to the plaintiffs to design a watertight building, and (2) breached express and implied warranties that the building, as designed, would be free of substantial defects. In the three remaining counts, the plaintiffs allege that the defendant Peabody Construction Co., Inc. (Peabody), (1) negligently breached a duty it owed to the plaintiffs to construct a watertight building, (2) made subsequent repairs to the building in a negligent manner, and (3) breached express and implied warranties that the completed building would be free of substantial defects. The plaintiffs also alleged that Lidapell had intentionally concealed the existence of latent design and construction defects and that Peabody had either concealed construction defects or, in the alternative, had made efforts at repairing

---

[3] No class was certified under Mass. R. Civ. P. 23, 365 Mass. 767 (1974), and no rule 23 issue is raised by this appeal.

the leaks which had the legal effect of postponing accrual of the cause of action in negligence.

The relevant factual allegations of the complaint can be summarized as follows. Heritage is a 301-unit housing complex for elderly persons and is currently owned and operated by the Boston Housing Authority (BHA). The plaintiffs White and Ferrara have lived in Heritage apartments since September 1, 1975, and October 1, 1975, respectively. Heritage was developed and originally owned by the defendant Lidapell and was sold to the BHA in October, 1975, as part of the federally subsidized "turnkey" program.[4] The defendant Peabody was the general contractor for the project. As a result of numerous design and construction defects at Heritage, serious, widespread, and continuing water leaks have occurred in the apartments occupied by the plaintiffs. The design defects stem from the defendants' failure to take account of prevailing weather conditions in designing the project and selecting construction materials. Water leakage into the common areas of the project and into the plaintiffs' apartments has caused the plaintiffs to suffer property damage and emotional distress and has impaired their use and enjoyment of their apartments. Damages are sought from Peabody in the amount of $30,000,000 and from Lidapell in the amount of $20,000,000 "to correct the defects and compensate the tenants for their property losses and injuries."

Lidapell and Peabody both moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In relevant part these motions raised the statute of limitations (G. L. c. 260, § 2B) as a bar to the negligence counts and lack of privity as a bar to the warranty counts. Peabody attached to its motion a copy of one of the contracts executed by Peabody and Lidapell, as well as the affidavit of Peabody's president attesting to the genuineness of the copy. Both defendants filed supporting briefs, as required

---

[4] The "turnkey housing" program is described in *Commissioner of Labor & Indus.* v. *Lawrence Hous. Auth.*, 358 Mass. 202, 204-205 (1970).

by Rule 9 of the Superior Court, as amended (1980). The plaintiffs filed a memorandum in opposition to the motions to dismiss, arguing, in part, that the parties had presented no facts with respect to the timeliness of the action; that facts relevant to accrual dates were disputed, rendering summary dismissal inappropriate; and that the allegations of the complaint with respect to various tolling doctrines should be taken as true or as raising factual issues for decision.

Counsel for all parties argued the motions before a Superior Court judge at a hearing held on January 13, 1981. During the oral argument, counsel for the plaintiffs conceded that the water leaks had begun "immediately," i.e., as soon as the named plaintiffs moved into Heritage on September 1 and October 1, 1975. On February 6, 1981, the judge issued a decision ordering the complaint dismissed as untimely under the three-year limitations period of G. L. c. 260, § 2B. The judge stated in his decision that he had treated the motion as one for summary judgment because he had considered the statement of the plaintiffs' counsel at oral argument, a matter outside the complaint, in reaching his decision. See Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974). The judge noted the plaintiffs' allegations of fraudulent concealment and justified late discovery of the claim but found these theories "inapposite" in light of the admission that the leaks began in 1975. He concluded that the plaintiffs' cause of action accrued at that time, making 1978 the last year in which a complaint could seasonably have been filed. Final judgment was entered in favor of the defendants on February 10, 1981.

On February 20, 1981, the plaintiffs filed a motion pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), to alter or amend the judgment, so as to reinstate the warranty counts of the complaint or to clarify the reasons for dismissal of these counts. The plaintiffs gave as grounds for the motion that the defendants' motion to dismiss had raised the statute of limitations only with respect to the negligence counts. On February 27, 1981, the plaintiffs filed a "motion for relief from judgment or order," see Mass. R. Civ. P.

60 (b) (1), (4), & (6), 365 Mass. 828 (1974), on the ground of surprise, citing as reasons therefor that neither party had moved for summary judgment, that the judge's disposition violated the notice requirements of Mass. R. Civ. P. 12 (b) and Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), and that the plaintiffs had been denied the opportunity to produce documents supporting a claim of fraudulent concealment. The motion represented that counsel for the plaintiffs had requested such an opportunity at the hearing on the motions to dismiss "if the motion was to be treated as one for summary judgment." In support of this motion the plaintiffs filed the affidavit of their counsel and numerous documents obtained from the BHA, all of which purported to provide "a factual basis for plaintiffs' allegations of fraudulent concealment and justified late discovery." Finally, the plaintiffs filed a motion for leave to file affidavits under Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974). They alleged that further discovery would be necessary for them to justify opposition to summary judgment and they requested a continuance to engage in such discovery. The rule 56 (f) affidavit of the plaintiffs' counsel, which was attached to this motion, described in detail the fraudulent concealment and late discovery theories the plaintiffs hoped to prove and the discovery devices which would be employed to obtain the facts to support these theories.

All three of the plaintiffs' postjudgment motions were denied on March 4, 1981, by the same judge who had earlier dismissed the complaint. The judge found the warranty counts barred by the statute of limitations and reiterated his previous ruling that the claim of fraudulent concealment was irrelevant on the facts of the case. The plaintiffs appealed from the judgment of dismissal and from the order denying the postjudgment motions, and we granted their application for direct appellate review. We affirm the judgment of dismissal.[5]

---

[5] In light of our conclusion, we have no occasion to discuss the rights, if any, of tenants generally against the designer or builder of their dwellings.

1. *Treatment of rule 12 (b) (6) motion as motion for summary judgment.* Rule 12 (b) of the Massachusetts Rules of Civil Procedure provides that "[i]f, on any motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The plaintiffs contend that it was reversible error for the judge to convert the defendants' rule 12 (b) (6) motions into rule 56 motions for summary judgment without first giving them notice and an opportunity to respond. We conclude that, in the circumstances of this case, any error in this regard was harmless.

The judge handled the defendants' motions as motions for summary judgment because, in reaching his decision, he considered the statement of the plaintiffs' counsel at oral argument that the leaks began "immediately." We assume, as the judge apparently did, that this admission was a matter "outside the pleading . . . presented to . . . the court" within the meaning of rule 12 (b),[6] thus triggering the conversion provision of rule 12 (b). Admissions may properly be considered by a judge deciding a summary judgment motion under Mass. R. Civ. P. 56 (c), and an admission may be established by a statement of counsel at oral argument. 6 Moore's Federal Practice par. 56.11 [6], at 287 (2d ed. 1982). 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1364, at 669, 672 (1969). See Reporters' Notes to Mass. R. Civ. P. 12, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 154 (1974) ("uncontroverted allega-

---

[6] We note that the complaint alleged the defendants' intentional concealment of the causes of action in negligence and delayed accrual of these claims, as well as the facts that the project was built in 1975 and has "serious, continuing" water leaks. In the circumstances, the statement of the plaintiffs' counsel that the leaks began immediately could conceivably be viewed as merely a reiteration of what was alleged in the complaint, see 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1366, at 681-682 (1969).

tions by counsel"). The plaintiffs do not argue that the fact admitted is not true. On the contrary, their reliance in their complaint on the doctrines of delayed accrual and fraudulent concealment suggests that the admission was accurate.

It is undisputed that the judge did not expressly notify the parties in this case of his intention to treat the defendants' motions under rule 56. As a general rule, it is important that the parties to an action receive notice of the judge's decision to proceed under rule 56, and many courts have found reversible error where the trial judge failed to give notice. 2A Moore's Federal Practice par. 12.09 [3], at 2302 n.25 (2d ed. 1982 & Supp. 1981-1982), and cases cited. 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1366, at 683 & n.72 (1969 & Supp. 1981). See *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894 (1977). The purpose of notice is to ensure that neither party is taken by surprise by the judge's reliance on material outside the pleadings and thereby deprived of an opportunity to present further material in response. Moore's Federal Practice, *supra* at 2302 n.25. C.A. Wright & A.R. Miller, *supra* at 683.

We fail to see how the plaintiffs in this case could have been unfairly surprised by the judge's use of the information furnished by their own counsel as to when the leaks began. The defendants' motion put them on notice that the statute of limitations would be an issue at the hearing. The judge's question could not have been unexpected. See *Dayco Corp.* v. *Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir. 1975) (no unfair surprise where notice of conversion would merely have informed parties of what they should already have known). This is not a case where the judge effected a conversion of a rule 12 (b) (6) motion to a rule 56 motion by relying on statements in an affidavit submitted by the moving party without affording the nonmoving party the opportunity to submit counter affidavits.[7] The critical

---

[7] In support of its motion to dismiss, Peabody submitted a copy of its construction contract with Lidapell as well as a brief affidavit of its presi-

fact was supplied by the plaintiffs themselves. Because we agree with the judge that the plaintiffs' admission is dispositive of the case, no purpose would be served by a remand. The plaintiffs had three weeks between the hearing of the defendants' motions and the judge's decision in which to submit further material and did submit such material after judgment was entered. In reaching our decision we have carefully considered both this material and the plaintiffs' claim that further discovery would produce viable issues for trial.

We have concluded that, as a practical matter, the plaintiffs have not been prejudiced by the failure of the judge to comply with the notice requirements of rule 12 (b) (6) and rule 56. See *Melanson* v. *Caribou Reefers, Ltd.*, 667 F.2d 213, 214 (1st Cir. 1981); *Dayco Corp.* v. *Goodyear Tire & Rubber Co., supra* at 392-393. We therefore turn to our underlying conclusion that summary judgment under rule 56 was appropriate because there is no genuine issue as to any material fact, and thus the defendants are entitled to judgment as a matter of law.

2. *Statute of limitations for negligence counts.* All parties agree that the statute of limitations applicable to the plaintiffs' negligence counts is G. L. c. 260, § 2B, as amended by St. 1973, c. 777, § 2, which reads: "Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration."

The determination of when a cause of action "accrues" has generally been left to the courts by the Legislature. *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980). *Cannon*

---

dent attesting to the authenticity of the contract. The contract and affidavit were relevant to a third-party beneficiary issue which was not the basis for the judge's decision and is not involved in this appeal.

v. *Sears, Roebuck & Co.*, 374 Mass. 739, 740 (1978). In making this determination, this court has been guided by the basic principle that "'a cause of action accrues on the happening of an event likely to put the plaintiff on notice.' *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974), and cases cited." *Franklin* v. *Albert, supra* at 618. In negligence cases the general rule has been that the cause of action accrues at the time of injury. *Cannon, supra* at 741. *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 106 (1980). See J.R. Nolan, Civil Procedure § 319, at 32 (Supp. 1981).

If the plaintiffs' causes of action in negligence accrued in 1975 (when they moved into their apartments), their action, brought in 1980, is barred by G. L. c. 260, § 2B. To avoid this result, the plaintiffs seek to bring themselves within the so called discovery rule under which certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct. This rule has been applied in a variety of settings. See, e.g., *Franklin* v. *Albert, supra* (medical malpractice); *Friedman* v. *Jablonski,* 371 Mass. 482 (1976) (deceit in sale of real estate); *Hendrickson* v. *Sears,* 365 Mass. 83 (1974) (negligent certification of title to real estate by attorney).

The language of G. L. c. 260, § 2B, clearly establishes some variant of the discovery rule for design and construction negligence cases. See *Hendrickson* v. *Sears, supra* at 89. We think the judge correctly held, however, that delayed discovery principles are not involved in this case. The plaintiffs admitted at oral argument and reiterate in their brief in this court that the building planned and constructed by the defendants was "plagued with serious leakage from its inception." This situation was sufficient to put them on notice that they were being injured.

The plaintiffs argue that their causes of action did not accrue until July, 1980, when "the cause of [and] cure for" the leaks had been "finally determined" by the BHA and the BHA had reported its findings to the plaintiffs' attorney.

This contention reflects a misunderstanding of the relationship between statutes of limitation, the "delayed discovery" doctrine, and the "discovery" devices authorized by our rules of civil procedure. In all cases the statute of limitations begins to run when the injured person has notice of the claim. The "notice" required is not notice of every fact which must eventually be proved in support of the claim. These details are properly the subject of requests for discovery once an action is filed. See Mass. R. Civ. P. 26-37. Rather, "notice" is simply knowledge that an injury has occurred.

In all of the delayed discovery cases cited above, the nature of the defendant's wrong was such that the plaintiff did not discover and could not reasonably have discovered that he or she had been injured until the limitations period, measured from the date the injury actually occurred, had already expired. The plaintiffs here knew they were injured in 1975. They should reasonably have known that widespread water leaks in a newly constructed building are almost certainly the result of design or construction defects. The building was a public project and the identity of its designer and builder were matters of public record. There was, in short, nothing inherently unknowable about these causes of action. *Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 555 (1977) (cause of action for leaky roof accrues when leaks discovered, not when plaintiff later learns no satisfactory repair is possible). In the circumstances of the case before us, the three-year limitations period began to run in 1975 and expired in 1978, well before the plaintiffs' complaint was filed in 1980.

We note that one of the negligence counts of the plaintiffs' complaint alleged that the defendant Peabody undertook to repair the leaks at the Heritage project and did so in a negligent manner. It is possible that some of this repair work was performed less than three years before the action was filed. However, the plaintiffs have made no separate argument addressed to the timeliness of this count. Further, and more importantly, there is no allegation that any

of the damage alleged by the plaintiffs was caused by the repair work and not by the alleged original construction and design defects. It is thus not necessary for us to discuss this count separately.

3. *Statute of limitations for warranty counts.* The plaintiffs argue that their complaint was timely under G. L. c. 106, § 2-318, as amended through St. 1974, c. 153.[8] Under that section of the Uniform Commercial Code (UCC), actions "against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty . . . or for negligence" must be brought "within three years next after the date the injury and damage occurs." We agree with the defendants that art. 2 of the UCC, which applies to "transactions in goods," G. L. c. 106, § 2-102, has no application in this case.[9]

General Laws c. 106, § 2-105, inserted by St. 1957, c. 765, § 1, defines "goods" as "all things . . . which are movable at the time of identification to the contract for sale." The contract between Lidapell and Peabody called for "[t]he erection of buildings" and the contract between Lidapell and the BHA was for the sale of a completed building. The wrongs alleged in the plaintiffs' complaint are defective "design" and "construction" of a building by the defendants. Neither of the underlying contracts was for the sale of movable things, although "goods" obviously played

---

[8] In the Superior Court, the plaintiffs also argued that they were third-party beneficiaries of the contract between the BHA and Lidapell for the sale of the project and that their warranty claims were governed either by the six-year limitation period established by G. L. c. 260, § 2, or the four-year period of G. L. c. 106, § 2-725 (1). These claims have not been pressed on appeal.

[9] The plaintiffs' argument that their action was timely is based on an interpretation of the words "injury and damage" in G. L. c. 106, § 2-318. In *Cameo Curtains, Inc.* v. *Philip Carey Corp.*, 11 Mass. App. Ct. 423, 425 (1981), the Appeals Court held that the three-year limitations period established by § 2-318 begins to run not "when the injury is first perceived" but when "the damage flowing from the injury can fairly be estimated." In view of our holding that art. 2 of G. L. c. 106 is not applicable to this case, we have no occasion to discuss the conclusion of the Appeals Court.

an incidental role in the construction. Contracts whose predominant factor, thrust, or purpose is the rendition of services are not within the scope of art. 2. *Bonebrake* v. *Cox*, 499 F.2d 951, 960 (8th Cir. 1974). Neither are contracts for the sale of structures attached to realty. Compare G. L. c. 106, § 2-105 (1), with § 2-107 (1), as amended through St. 1979, c. 512, § 4 ("[a] contract for the sale of . . . a structure or its materials to be removed from realty is a contract [within art. 2]." Cases from other jurisdictions support our conclusion that construction contracts such as that involved here are not contracts for the sale of goods. See *Lincoln Pulp & Paper Co.* v. *Dravo Corp.*, 436 F. Supp. 262, 275 (D. Me. 1977) (applying Pennsylvania law; contract for engineering and construction of a heat and chemical recovery unit); *Stephenson* v. *Frazier*,     Ind. App.    , (1980) (399 N.E.2d 794, 797 [Ind. App. 1980]) (contract for construction of foundation and installation of septic system); *Milau Associates* v. *North Ave. Dev. Corp.*, 42 N.Y.2d 482, 487-488 (1977) (design and installation of sprinkler system during erection of building); *DeMatteo* v. *White*, 233 Pa. Super. 339, 345-346 (1975) (contract for construction of residence).

The plaintiffs have cited no case holding that a contract for the construction or sale of a completed building is a sale of goods.[10] One case cited by the plaintiffs, *Entron, Inc.* v. *General Cablevision*, 435 F.2d 995 (5th Cir. 1970), which involved a contract for the construction of a cable television system, is arguably at odds with some of the cases cited above. In *Entron*, however, the seller was also the manufacturer of many parts of the system. In addition, the court attached great weight to a provision of the contract specifying that all material used would remain "personal property" until final payment and acceptance occurred. *Id.* at 1000. In any event, the case did not involve construc-

---

[10] Perhaps in recognition of this fact the plaintiffs state in their brief that they "principally rely upon G. L. c. 260, § 2B" as the statute of limitations applicable to their claims.

tion of a building and is not persuasive here. The plaintiffs are not helped by the fact that their complaint alleged, inter alia, that certain materials for the building were defectively selected for the purposes intended. The contracts between the defendants and between the BHA and Lidapell were not contracts for the sale of bricks or window frames or caulking material but contracts for the construction and sale of a building.

In sum, no transaction in goods (G. L. c. 106, § 2-102) sufficient to bring the plaintiffs' action under art. 2 has been shown.

4. *Fraudulent concealment and equitable estoppel.* The plaintiffs maintain that, even if their cause of action accrued when the leaks first occurred, a factual issue exists (or could be shown to exist if further discovery were allowed) as to whether the defendants fraudulently concealed the cause of action. They contend summary judgment is therefore inappropriate. In making this argument, the plaintiffs assume again that there is a material distinction between knowledge of the leaks and knowledge that the specific causes of the leaks were design and construction deficiencies in the building.

"In the absence of a fiduciary duty of full disclosure, the period of limitations was not tolled under G. L. c. 260, § 12 [the Massachusetts fraudulent concealment statute], unless the defendant[s] concealed the existence of a cause of action through some affirmative act done with intent to deceive. *Stetson* v. *French*, 321 Mass. [195, 198 (1947)], and cases cited." *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 108 (1980). See also *Lynch* v. *Signal Fin. Co.*, 367 Mass. 503, 507 (1975). "[A] cause of action is not concealed from one who has knowledge of the facts that create it." *Stetson* v. *French, supra.* By their own admission, the plaintiffs were aware of the leaks in 1975. In their brief they characterize their building as containing "an extraordinary number of leaks from the time of the initial occupancy," and they point to material establishing that they complained to the BHA about the leaks "regularly from 1975

through 1979."[11] They had knowledge of their cause of action in 1975. The allegations that the defendants blamed the leaks on the weather or on improper maintenance by the BHA are not positive acts of concealment. At most they are denials of responsibility for conditions of which the plaintiffs were fully aware. Denials of this sort would not constitute fraudulent concealment. *Sanborn* v. *Gale*, 162 Mass. 412, 413-414 (1894).

The plaintiffs suggest that the defendants undertook "superficial waterproofing repairs, affirmatively attempting to mask the true cause of the leaks." Even assuming the truth of this allegation, the repair efforts did not succeed in concealing from the plaintiffs their cause of action and, in any event, should have had the effect of removing any doubts as to the identity of those responsible for the plaintiffs' injuries.

The plaintiffs argue, in the alternative, that the defendants should be estopped from raising the statute of limitations "because of their conduct in continuing to represent that the problem would be solved by waterproofing." It appears that this theory is being raised for the first time in this court. No facts relevant to this issue are alleged in the complaint, although facts suggesting fraudulent concealment are alleged. Furthermore, no mention of it is made in the judge's opinions, although fraudulent concealment and delayed accrual are discussed (and found to be irrelevant). The plaintiffs have no right to have this issue considered for the first time on appeal.

In any event, estoppel would require proof that the defendants made representations they knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations. See, e.g., *LaBonte* v. *New York, N.H & H.R.R.*, 341 Mass. 127, 131 (1960); *MacKeen* v. *Kasinskas,*

---

[11] The plaintiffs' rights against these defendants are not enlarged by the fact that the BHA has been in receivership since 1980, thus making a suit against their landlord unattractive.

333 Mass. 695, 698, (1956); *McLearn* v. *Hill*, 276 Mass. 519, 525-527 (1931).   Neither in their complaint nor in any of their postjudgment submissions have the plaintiffs alleged or offered to prove that representations as to the effect of waterproofing were conveyed to them or that their failure to bring an action before 1978 was induced by any representations that were made.[12]   In addition, it is difficult to see how a representation by the defendants "that the problem would be solved by waterproofing" could reasonably induce the plaintiffs to delay bringing an action for damage already sustained.

We conclude that the plaintiffs' claims are time-barred and that, in the circumstances, none of the information which the plaintiffs seek a continuance to discover could remove this bar.   The defendants were therefore entitled to judgment as a matter of law.

*Judgment affirmed.*

---

[12] In fact, the affidavits submitted by the plaintiffs' attorney do not mention estoppel although they offer expressly to produce material in support of the fraudulent concealment and late discovery claims.