Butler, J.
Statement of the Case
On September 19, 1991, the plaintiffs, Patrick L. and Jean C. Rose, filed this action seeking damages for defects found in condominiums they purchased in 1986 and 1988. They sued David E. Nassif and Jack Antaramian, individually, as Trustees of Fifty Water-town Street Realty Trust, and as General Partners of Fifty Watertown Street Limited Partnership. The four-count complaint asserted claims of tort (negligence and misrepresentation), contract, G.L.c. 93A and rescission.
In October 1991, the Roses amended the complaint to add Antaramian Realty and Construction, the general contractor, Northern Construction, Richard L. Hickey Co., William Howe Associates and United Masonry Co., Inc. Also included in this amended Complaint was Sasaki Associates, Inc., the architect. The Roses claim that Sasaki negligently performed its architectural services for the condominium project.[1]
The case is now before the Court on the motion of the defendant Sasaki for summary judgment.
BACKGROUND
From the affidavits and discovery documents submitted, the following facts are not in dispute:
By the end of the summer of 1986, the Waterbridge Condominium was substantially completed. The owner/developer was Jack Antaramian and David Nassif, Trustees of 50 Watertown Realty and Construction Corp. The general contractor was Antaram-ian Realty and Construction Corporation.
Sasaki was hired by Antaramian to be the architect. Under the Owner/Architect Agreement, Sasaki agreed to prepare drawings and outline specifications for the design of the building to be built at 50 Watertown Street, and later known as Waterbridge Condominium. Antaramian was both the owner and contractor, and under the agreement, Antaramian retained authority to decide the quality of many of the component parts *331 of the project. Under the agreement, Sasaki is not responsible for the means or methods of construction, for the quality of work or quality of materials actually used in construction. As with any project, the owner retained the right to substitute materials and to build the building as the owner desired; the architect had no power over the owner’s choices.
The architect’s contract specifically provided that although the architect was to make visits on site “when requested by owner” “to determine in general if the work is proceeding in accordance with the Construction documents," the architect “shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work.”
The Roses purchased Unit 313 of the Waterbridge Condominium in Watertown in the fall of 1986. They resided there until they moved, in December 1988, to Unit 602.
The Roses never had a contractual relationship with Sasaki.
In February or March 1987, the Roses experienced water problems in Unit 313 in the kitchen and dining room ceilings. Mrs. Rose reported the problem to an agent of Tudor Management, the managing company for the condominium.
From July 1987 through September 1988 the developer had subcontractors perform significant waterproofing at the building. The water problem in Unit 313 was apparently solved by the waterproofing, with the exception of a small area near the sliding glass doors in the living room. Tudor’s agent advised the Roses that these doors needed caulking. The developer did the caulking, and thereafter, there were no further water problems in Unit 313 until several months after the Roses moved to Unit 602.
In September 1987, all unit owners, including the Roses, were informed by letter by Tudor that the building was undergoing additional waterproofing. The letter noted that the work would be performed starting with the first floor, working to the sixth floor.
In the winter of 1987-1988, Tudor’s agent, Barbara Lyons, received a complaint from the tenant in Unit 602 of water infiltration. Ms. Lyons investigated the complaint, and determined that a steel beam inside the outer wall of the living room had not been insulated properly. Moisture condensed on the beam, and infiltrated into the unit. In January or February of 1988, the responsible subcontractor insulated the steel beam. Thereafter, stain kill was applied to the water-damaged wall.
In the fall of 1988, the Roses purchased Unit 602. It is a rooftop penthouse apartment with a Wasco skylight transversing substantially all of the living room. For the purposes of deciding this motion, the court accepts as true Mrs. Rose’s statement that she specifically asked if there were any water problems or heating problems in Unit 602, and that an agent of Antaramian Realty indicated that there were no such problems. After the closing, the Roses spent a considerable sum on improvements, then moved into Unit 602. The Roses retained Unit 313 as a rental unit.
On January 26, 1989, Mrs. Rose noticed water problems in Unit 602, and reported them to the management company.
The plaintiffs seek damages for water infiltration into both Unit 313 and Unit 602. They base their claim against Sasaki on a theory of professional negligence, and support the claim with the opinion of a licensed architect stating that based upon his viewing of a videotape taken in October of 1992, and a personal inspection of the building in December 1992, the architect was negligent in the performance of its duties and in certifying in 1986 that the building was “substantially complete.”
DISCUSSION
Sasaki moves for summary judgment on three bases: (1) the Roses’ claims are barred by the three-year statute of limitations, G.L.c. 260, §2B; (2) the Roses are not the “real parties in interest” to maintain the action pursuant to the Massachusetts Condominium Statute, G.L.c. 183, §10(b); and (3) the Roses cannot recover their damages — economic losses— from Sasaki because of the “economic loss doctrine.”
Unit 313
Without reaching the issue of the source of water infiltration in Unit 313 — i.e., whether it emanated from the unit itself or from a common area — the Roses’ claims against Sasaki for alleged negligence concerning that unit are barred by the three-year statute of limitations contained in G.L.c. 260, §2B.[2] Sasaki rendered its services no later than 1986, and therefore performed negligently, if at all, in 1986 and earlier.
Even if one were to apply the “discovery doctrine” to the statute of limitations, see White v. Peabody Construction, 386 Mass. 121 (1982), the Roses had actual notice of water problems in Unit 313 no later than March 1987. Since suit was not commenced until September 1991, the statute of limitations bars the Roses’ claims against Sasaki for Unit 313’s deficiencies.
The plaintiffs’ assertion that the statute of limitations was tolled, pursuant to G.L.c. 260, §12, by the fraudulent concealment of the owner/developer may create an issue of fact with respect to those defendants; however, there is neither an allegation nor any evidence that Sasaki was either in a position to fraudulently conceal the facts from the plaintiffs, or did so. There is no basis upon which to charge Sasaki with any alleged misrepresentations of the owner/develop er / contractor.
The court finds unpersuasive the plaintiffs’ argument that Libman v. Zuckerman, 33 Mass.App.Ct. 341 (1992), applies to this case. Libman involved a suit against the developer/contractor for breach of con *332 tract and negligence incident to the construction of a condominium building, with particular reference to the installation of the wrong kind of siding, which resulted in severe problems for the unit owners. In Libman, there was ample evidence to warrant an estoppel argument against the defendants who, parenthetically, also constituted the initial condominium association, which had exclusive control over the decision to sue. See, discussion re G.L.c. 183A, §10(b)(4), post.
Unit 602
Turning now to the plaintiffs’ claims against Sasaki for the water problems in Unit 602, the issue is decided by the application of G.L.c. 183, §10(b). All of the submitted materials indicate that the sources of the water infiltration problem in this unit are from the skylight and/or roof and exterior walls. The skylight, of course, is part of the roof of the building, notwithstanding the position of the condominium association that the skylight is not a common area.
General Laws c. 183, §10(b) provides, in pertinent part:
Such corporation, trust or association shall have, among its other powers, the following rights and powers:
(4) To conduct litigation and to be subject to suit as to any course of action involving the common areas and facilities . . .
G.L.c. 183A, §1 defines “common areas” as,
shall, except as otherwise provided or stipulated in the master deed, mean and include:
(1) the foundations, columns, girders, beams, supports, party walls, common walls, main walls, roofs, halls, corridors, lobbies, public stairs and stairways, fire escapes and entrances and exits of the building;
These provisions do not preclude an individual unit owner from proceeding against a developer or contractor for breach of contract claims. Cigal v. Leader Development Corp., 408 Mass. 212, 215-16 (1990). However, the Supreme Judicial Court in Cigal also made it clear that G.L.c. 183A, §10(b)(4) makes the condominium association “the exclusive representative of the unit owners in litigation for negligent construction.” Noting that piecemeal litigation would frustrate the statutoiy scheme, the court held that any litigation for negligence in construction of the common areas must be brought by the association, and it upheld the dismissal of the plaintiffs’ individual complaint. Cigal, supra, at 218.[3]
ORDER
For the foregoing reasons, the motion of the defendant Sasaki must be ALLOWED. Judgment to enter accordingly.

 Another Amended Complaint was thereafter filed on January 14, 1992, adding Hamilton Windows, Inc., Bird, Inc. d/b/a Trocal; Timothy Lambert d/b/a The Window Place; and Wasco Products, Inc; also, on May 26, 1992, the court allowed a motion to add Waterbridge Realty Trust, Jack J. Antaramian and David E. Nassif trustees, as additional party defendants. The case has been dismissed as against the following defendants: Hamilton Windows (3-17-92); Bird (8-6-93) and Wasco (8-6-93).

 G.L.c. 260, §2B, in pertinent part, states that “actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property ... shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of the opening of the improvement to use; or substantial completion of the improvement and the taking of possession for occupancy by the owner.”

 The Cigal court noted that the plaintiffs should be allowed to bring the action derivatively on behalf of all unit owners, since the association had failed to act. The Waterbridge association has brought suit against the developers and others; however, it did not name Sasaki as a defendant. Accordingly, plaintiffs should not be allowed to amend their complaint to sue Sasaki derivatively.