Garsh, J.
This action relates to financing for a real estate development in Natick known as the Cottage Estates Subdivision. Plaintiffs David S. Porter (“Porter”), Techbuilt Homes, Inc. (“Techbuilt”), and Three D Excavating, Inc. (“Three D”) assert a variety of claims against Framingham Savings Bank (the “Bank”) and one of its officers, Yvonne M. Venuti (“Venuti”).
The Bank and Venuti moved to dismiss the Complaint on several grounds. At the hearing on the motion to dismiss, the following actions were taken without opposition: Count V (conversion) was dismissed with prejudice as to Techbuilt and Three D; Count VI (breach of duty of good-faith and fair-dealing) was dismissed without prejudice as to all plaintiffs, said claims to be incorporated as part of the existing contract counts; Count VII (tort of bad faith, denial of contractual relations) was dismissed with prejudice as to all plaintiffs. The defendants claim that the remaining counts should be dismissed because they are barred as compulsory counterclaims not asserted in a pending action, by the statute of limitations, or by the corporations’ failure to be represented by an attorney. For the following reasons, the motion to dismiss is allowed in part and denied in part.
BACKGROUND
The Complaint makes the following allegations: In March of 1986, Porter obtained funding from the Bank to purchase lots within a subdivision in Natick known as the Cottage Estates Subdivision (“Cottage Estates”). Later that year, Porter obtained construction financing from the Bank to fund construction on three of the lots.
In May of 1987, Porter entered into agreements to sell certain lots. The Town of Natick (the ‘Town”) advised Porter that the lots would not be released from the Planning Board covenants for sale until the roadway work was completed or a bond in the amount of $152,000 was posted as security for the Town.
In July of 1987, the Bank agreed to advance $150,000 from the Cottage Estates construction mortgage to be used as a bond to secure completion of the roads. Porter deposited the $150,000 advanced by the Bank, along with $2,000 of his personal funds, into a passbook savings account at the Bank. The passbook, issued in the name of David S. Porter, was pledged under the terms of an agreement between the Town, the Bank, and Porter, known as a “Form J — Performance Secured by Bank Passbook” (“Form J”). The passbook was forwarded to the Town in accordance with the Form J agreement.
In early to mid 1988, the Bank agreed that the funds held in the passbook account could be pledged to contractors as security for their promises to complete the road work. In mid 1988, Porter contracted with Three D, Techbuilt, and HiWay Paving, Inc. (“HiWay”) to complete the road work within Cottage Estates. Porter was an officer and stockholder of Techbuilt and Three D. The contractors agreed to perform the work based upon the Bank’s promise that they would be paid immediately upon completion of their work, including acceptance by the Town, and that said payment would be secured by and disbursed from the funds held by the Town to secure completion of the road. At HiWay’s request, the passbook was replaced with two new passbooks, one in the name of Porter and HiWay in the amount of $42,000, and the other in Porter’s name only for $110,000.
In September of 1988, the officer with whom Porter had transacted business left the employ of the Bank, and Porter thereafter dealt with Venuti. Venuti was told by Porter in early 1989 that the funds in the passbook savings accounts had been pledged to the contractors and were to be paid to the contractors upon completion of the work and acceptance by the Town. Venuti encouraged the contractors to continue to work on the Cottage Estates road during 1989, knowing that they relied on the promises of Porter and the Bank that funds held in the passbook savings accounts would be released to them upon completion of the work and acceptance by the Town.
In October of 1989, Porter advised Venuti that he was submitting a request to the Town that the bond requirement be reduced so that the contractors could be paid. The Form J agreement obliges the Bank to deliver funds to the Town upon demand. On October 25, 1989, the Town attempted to withdraw funds from the Bank, but the Bank refused to allow the Town to withdraw. The Town then authorized a reduction in the bond to $42,000 and released to Porter the passbook in the amount of $110,000. When Porter attempted to withdraw funds from that passbook savings account to make payment to Three D and Techbuilt, the Bank refused to release the funds. The Bank stated that it would consider release of the funds only as part of an overall workout agreement with Porter on all of Porter’s loans on terms favorable to the Bank.
*486 The Bank’s refusal to release funds for payment to the contractors caused them severe financial hardship. Porter advised the Bank that the contractors would complete the work only after they had been paid for work completed to date. The Bank continued to refuse to release the passbook funds to Porter for payment to the contractors for work performed by them. The work on the grading and landscaping remained incomplete. In June, 1990, the Bank foreclosed its mortgages on the Cottage Estate lots prior to completion of the grading and landscaping.
Venuti instructed that the funds in the passbook accounts be set off against the loan balances relating to Cottage Estates despite her acknowledgment that the funds were being held in trust for the contractors. The Bank was advised in late 1989 and early 1990 that its failure and refusal to honor the Bank’s commitments to Techbuilt, Three D and Porter would cause each severe financial hardship and could cause Three D to go out of business.
In October, 1990, the Bank commenced an action against Porter for deficiencies that remained after foreclosure of mortgages the Bank held on certain Porter projects. That case, which is still pending, was docketed as Middlesex Superior Court Civil Action No. 90-7400 (the “Middlesex Action”). Cottage Estates is among the projects as to which the Bank seeks to recover deficiencies in Counts II and III of the Middle-sex Action. The Middlesex Action asks that the Court enter judgment under Count II and III in favor of the Bank against Porter, individually and as General Partner of David Associates, in the amount of the Bank’s damages to be determined at trial. Porter filed no counterclaim in the Middlesex Action with respect to the Cottage Estates project. Venuti, Techbuilt and Three D are not parties to the Middlesex Action.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of the complaint and any permissible inferences are to be drawn in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). A“complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 42, 45-46 (1957). All inferences should be drawn in the plaintiffs favor, and the complaint “is to be construed so as to do substantial justice . . .” Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991).[3]
Prior Pending Suit/Compulsory Counterclaims
Rule 12(b)(9) provides that a case is subject to dismissal where there is pending a prior action in a court of the Commonwealth. That rule is designed to prevent “claim splitting.” Keen v. Western New England College, 23 Mass.App.Ct. 84, 86-87 (1986). Rule 13(a), moreover, requires that a pleading “state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim . ..” Failure to do so precludes a defendant from bringing that claim in a subsequent suit. Yentile v. Howland, 26 Mass.App.Ct. 214, 216 (1988).
Classification of a counterclaim as compulsory or permissive depends upon the definition of the phrase “arises out of the transaction or occurrence.” The words “transaction” and “occurrence” are broad ones. As the United States Supreme Court has stated, in construing a former Federal Equity Rule, “ ‘[transaction’ is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.” Moore v. New York Cotton Exchange, 270 U.S. 593, 610 (1926). Together, the two words “transaction” and “occurrence” encompass “whatever may be done by one person which affects another’s rights and out of which a cause of action may arise.” Williams v. Robinson, 1 F.R.D. 211, 213 (D.D.C. 1940). A counterclaim is compulsory only if it “arises out of’ the transaction or occurrence that forms the basis of the plaintiffs claim. A claim generally is deemed to arise out of the same transaction or occurrence if the two claims are “logically related.” United Fruit Co. v. Standard Fruit and Steamship Co., 282 F.Supp. 338, 339 (D. Mass. 1968). As the Reporters’ Notes to Rule 13 point out, in analyzing Rule 13, it may be helpful to look to Potier v. Perry, Inc., 286 Mass. 602, 608 (1934), in which the Supreme Judicial Court construed a former rule containing the same test “in a sense to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and to the public, and to expedite the adjudication of suits.”
Applying these standards to the Complaint, Porter’s claims against the Bank, but not Venuti, for breach of contract (Count I), deceit, fraud and misrepresentation (Count IV), and conversion (Count V) must be dismissed because the Middlesex Action is a prior pending action between the same parties in which such claims ought to have been asserted as compulsory counterclaims. Count I alleges that the Bank violated the Form J agreement by refusing to release funds to the Town and by breaching the duty of good faith and fair-dealing inherent in the written and oral agreements entered into by and between the Bank, Porter, Techbuilt and Three D.[4] Count IV alleges that the Bank misrepresented to the plaintiff that it would release the funds held in the passbook savings accounts to Porter as the work on the Cottage Estates subdivision was completed and accepted by the Town. Count V alleges that the Bank wrongfully exercised *487 dominion and control over Porter’s funds when it refused to release them to the Town on demand.
If the allegations of those counts of the Complaint are correct, then the Bank would have had no right to set off the passbook savings accounts against Porter’s indebtedness. Whether the Bank was entitled to use the funds in the passbook savings accounts to reduce Porter’s indebtedness must be determined in the Mid-dlesex Action in order to establish the amount of the deficiency, if any. Indeed, at the hearing on the motion to dismiss, Porter conceded that, assuming the Bank prevails in the Middlesex Action, the fact-finder in that case will, of necessity, have to figure out whether the setoff was proper in order to calculate how much money Porter owes the sank.
The Court in the Middlesex Action has the power to grant the relief sought in Counts I, IV and V. Porter possessed those claims at the time of serving his answer in that action. The claims arose out of a transaction or occurrence that is the subject matter of the Bank’s claim in the pending Middlesex Action. The claims not only are logically related, but “on balance, sound judicial administration and the public interest would best be served by requiring their resolution in a single piece of litigation.” Smith & Zobel, 6 Mass. Practice Series (Rules Practice) §13.15 at 374 (1974). Pursuant to Rules 12(b)(9) and 13(a), Porter may not raise Counts I, IV and V as claims in a new action.
The issues raised by Count VIII, by contrast, would not necessarily be determined in the Middlesex Action. That count seeks recovery pursuant to M.G.L.c. 167D, §19. This statute provides a remedy for actual damages suffered as a result of a bank’s failure to send written notice by certified mail “forthwith” whenever a bank, as a consequence of a default of a debt owed to said bank by a depositor, transfers funds of such depositor to reduce or extinguish said debt. Porter claims that the Bank never has given him proper notice of the setoff and that he has been injured as a direct result. Although the Middlesex Action will resolve the Bank’s entitlement to retain the funds in the passbook accounts in connection with ascertaining the amount of outstanding indebtedness, that action need not resolve whether proper notice was given and, if not, whether Porter suffered any “actual damages.”[5] Sound judicial administration and the public interest may best be served by resolving Porter’s statutory notice claim as part of the Middlesex Action, but the statutory claim is not sufficiently logically related to the Middlesex Action so as to trigger the sanction of dismissal for failure to have asserted it as a counterclaim in that case.[6]
Count IX restates all of the allegations of the Complaint and alleges that the conduct set forth in those allegations constitutes unfair or deceptive practices in violation of chapter 93A, §§2(a) and 11. To the extent that Count IX against the Bank is based upon those allegations which comprise the breach of contract, fraud, and conversion claims, it is barred as a compulsory counterclaim for the same reasons that the underlying claims were barred. To the extent that Count IX is based upon the Bank’s alleged violation of G.L.c. 167D, §19, it is not barred as a compulsory counterclaim.
Statute of Limitations
The defendants claim that the tort claims for fraud and conversion (Counts IV and V), as well as the statutory claims for violation of G.L.c. 167D and c. 93A (Counts VIII and IX), are time-barred by the applicable statute of limitations. The tort claims are governed by a three year statute of limitations, G.L.c. 260, §2A, and the statutory claims by a four year statute of limitations, G.L. 260, §5A.
“In all cases the statute of limitations begins to run when the injured person has notice of the claim. The ‘notice’ required is not notice of every fact which must eventually be proved in support of the claim . . . Rather, ‘notice’ is simply knowledge that an injury has occurred.” White v. Peabody Construction Co., Inc., 386 Mass. 121, 130 (1982). See also Hendrickson v. Sears, 365 Mass. 83, 89 (1974) (“A cause of action accrues on the happening of an event likely to put the plaintiff on notice”).
The fraud count is based upon the failure of the Bank and its officers, including Venuti, to release funds held in the passbook savings accounts contrary to representations. According to the Complaint, the Bank refused to release the funds in October of 1989 and again in 1990. The allegations of the Complaint make clear that, by these dates, Porter and the two corporate plaintiffs knew that there had been misrepresentations made to them resulting in damage. This suit was not filed until 1995.[7] Count IV alleges no inherently unknowable wrong that the plaintiff did not discover, nor could not reasonably have discovered, prior to expiration of the limitation period. A complaint which shows on its face that the statute of limitations has run prior to the date the action is commenced fails to state a claim and is subject to dismissal under Rule 12(b)(6). Babco Indus., Inc. v. New England Merchants Nat'l Bank, 6 Mass.App.Ct. 929, 929 (1978).
The conversion count is similarly time-barred. That claim is based upon the Bank wrongfully exercising dominion and control over Porter’s funds, which funds the Bank refused to release to the Town on demand and which funds the Bank otherwise knew had been pledged to and were being held in trust for the contractors. Once again, the Complaint makes it clear that the conversion took place in October of 1989. At that time, the Bank, according to the Complaint, wrongfully exercised dominion and control over Porter’s funds. The fact that Porter may not have discovered until 1992 that the Bank not only wrongfully exercised dominion and control over his funds, but also used these funds to reduce Porter’s indebtedness, does not alter the fact that Porter was aware, *488 more than three years before the filing of this suit, that the Bank had converted funds in the passbook savings accounts.
To the extent that the chapter 93A claim is based upon claims other than failure to comply with G.L.c. 167D, Count IX is time-barred as well. All the other acts alleged in the Complaint had occurred, and were obviously known to have occurred, more than four years before the filing of the Complaint.
Looking only at the allegations of the Complaint, it cannot be said that the c. 167D claim (or related c. 93A claim) is also time-barred. Claims under G.L.c. 167D are governed by the four year statute of limitations for actions “arising on account of violations of any law intended for protection of consumers . . .” G.L.c. 260, §5A. Chapter 167D, §19 is not one of the specifically enumerated consumer protection acts, but c. 260, §5A is expressly not restricted to causes of action arising out of violations of the laws specified in that statute. Mahoney v. Baldwin, 27 Mass. App. 778, 780 (1989). Like the named statutes, such as c. 93, §28 (collection agencies), c. 93, §49 (credit bureaus), c. 140, §§96-114b (small loan companies), and c. 140D (consumer credit disclosure), c. 167D, §19, has as its primary intended goal the protection of consumers. A claim under that statute is, therefore, governed by the four year statute of limitations set out in G.L.c. 260, §5A.
Although Porter undoubtedly was aware that he could not get access to his funds, it does not follow that he knew that the Bank had used the passbook savings accounts to reduce his indebtedness. It is the transfer without notice that triggers the cause of action for damages under c. 167D, §19. The Complaint alleges that the Bank failed and refused, until April of 1992, to account to Porter for the funds held in the two passbook savings accounts, despite his repeated requests. A depositor has no way of ascertaining what a bank has done with his funds if the bank refuses to tell him. The bank has a duty of full disclosure regarding the transfer of a debtor’s funds to extinguish a debt imposed by G.L.c. 167D. A bank which frustrates a depositor’s attempts to ferret out what the bank has done with his money can hardly complain that the depositor did not commence an action for defective notice within four years after the setoff was effected.
Reading the Complaint with all inferences drawn in Porter’s favor, it may be read as alleging that the period of limitations is tolled by G.L.c. 260, §12, which provides for the exclusion of the period prior to the discovery by plaintiff that a cause of action exists when there has been fraudulent concealment of said cause of action by the defendant. The Complaint alleges more than the mere failure to comply with a statutory notice provision. It does not simply allege a “bare statutory violation giving rise to liability,” which alone does not rise to the level of fraudulent concealment. Lynch v. Signal Finance Co., 367 Mass. 503, 508 (1975) (plaintiffs knew the terms of the loan and knew what had been disclosed to them and what had not). Instead, it alleges refusal by the Bank, despite repeated requests, to let Porter know what it did with his money. The Complaint is not, on its face, time-barred as it was filed within four years after Porter alleges he discovered the setoff.
Corporate Counsel
Relying upon Varney Enterprises, Inc. v. WMF, Inc., 402 Mass. 79, 79 (1988), the defendants assert that Techbuilt and Three D may not maintain this action because the Complaint was not signed by counsel for those corporate plaintiffs. Techbuilt and Three D are now represented by counsel, who has signed the Complaint. Thus, the defendants are not entitled to dismissal of any counts based upon the failure of Techbuilt or Three D to have corporate counsel when the Complaint was filed.[8]
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion to dismiss is ALLOWED as to Counts I, IV, and V, DENIED as to Counts II, III and VIII, and ALLOWED as to Count IX, except insofar as that Count is predicated upon an alleged violation of G.L.c. 167D, §19.

In ruling upon the motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), matters outside the pleading presented to the court have not been considered. The Complaint filed by the Bank in the Middlesex Action was taken into consideration with respect to the Rule 12(b)(9) motion.

Count I is read as if it were amended to incorporate the dismissed Count VI.

In their reply brief, defendants advance the argument that, even if Porter could maintain his individual claims in this action notwithstanding the prior pending action, he can allege no damages to himself individually resulting from the Bank’s alleged actions. Porter has alleged damage from the Bank’s failure to notify him promptly of the setoff. That allegation is sufficient to enable the Complaint to survive a motion to dismiss.

The Bank took the position during oral argument that, if any claims were to survive, they should be consolidated with the Middlesex Action. Resolution of that suggestion should await the filing of a Motion to Consolidate.

A virtually identical suit was filed in November 1992 by Porter and Three D. That complaint was voluntarily dismissed.

In their Reply Brief, the defendants also argue that the claims of the corporations must be dismissed because there is no allegation that the work they were required to perform was ever completed. Drawing all inferences in favor of the corporate plaintiffs, it cannot be said that the Complaint fails to state a claim. The Complaint alleges that the Bank promised funds in the passbook accounts could be pledged as security for the contractors and that the Bank violated that agreement by retaining those funds for its own purposes, depriving the contractors of their security. A summary judgment motion is the appropriate vehicle to test the sufficiency of the evidence in support of the corporate plaintiffs’ claims.